**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| VA MINH LY; LIN SAU SLEN; DIEU VAN HUYNH; THI THU HUONG PHAN; LONG DAT ON; THI HUE PHAN; HIEN THI TRAN; TIN VAN DANG; THI BAU NGUYEN; and THUY THU TRAN,<br><br>Plaintiffs, | v. | U.S. CITIZENSHIP AND IMMIGRATION SERVICES; U.S. DEPARTMENT OF HOMELAND SECURITY; KEVIN RIDDLE, USCIS CHICAGO FIELD OFFICE DIRECTOR; OFFICER DO; OFFICER DAO; OFFICER SMITH; OFFICER ARCANGEL; OFFICER DERIC D. JORDAN; and JOHN or JANE DOE FEDERAL OFFICERS 1-4,<br><br>Defendants. |

Case No.: ____________

**CONSOLIDATED CIVIL COMPLAINT**

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ........................................ 3

**JURISDICTION AND VENUE** ........................................ 6

**PARTIES** ........................................ 7

A. Plaintiffs ........................................ 7

B. Defendants ........................................ 10

**STATUTORY AND REGULATORY FRAMEWORK** ........................................ 12

A. Administrative Procedure Act (APA) ........................................ 12

B. Immigration and Nationality Act (INA) ........................................ 13

C. Rehabilitation Act of 1973 ........................................ 14

**FACTUAL ALLEGATIONS** ........................................ 15

A. April 2026 Targeted N-648 Interview Campaign ........................................ 15

B. May 8, 2026 Email Inducement Trail and Detrimental Reliance ........................................ 17

C. The Continued N-648 Targeted Enforcement Campaigns ........................................ 18

D. The June 18, 2026 Warrantless Residential and Workplace Raids ........................................ 19

E. Government Notice and June 24 Interrogation ........................................ 21

**CLAIMS FOR RELIEF** ........................................ 24

FIRST CLAIM FOR RELIEF (APA) ........................................ 24

SECOND CLAIM FOR RELIEF (Rehabilitation Act) ........................................ 27

THIRD CLAIM FOR RELIEF (Fifth Amendment) ........................................................29

FOURTH CLAIM FOR RELIEF (Declaratory and Injunctive) ....................................31

**SECTION VII – PRAYER FOR RELIEF** ...................................................................32

## PRELIMINARY STATEMENT

1. This consolidated civil rights and administrative action is brought by twelve named Plaintiffs who are lawful permanent residents within the Northern District of Illinois. Plaintiffs are primarily elderly, disabled, and vulnerable Vietnamese foreign nationals who have lawfully resided in this country for years, and in many cases for decades, and who are currently being deprived of their statutory right to naturalization due to an unlawful, unwritten administrative policy implemented by the USCIS Chicago Field Office. Each Plaintiff validly sought naturalization pursuant to the rights and processes established under the INA.

2. The central legal question presented by this action is the lawful scope and application of the "credible doubt" standard as used by immigration officers during Form N-648 medical waiver reviews.

3. Beginning in April 2026, Defendants subjected Plaintiffs to a systematic and highly punitive pattern of conduct that flagrantly departed from governing federal statutes, regulations, and binding agency policy.

4. Specifically, Plaintiffs allege that the USCIS Chicago Field Office routinely relied on applicants' ability to perform basic, low-level routine tasks—such as driving short distances or performing custodial cleaning work in a nail

salon—as a non-medical, pretextual basis to override certified clinical diagnoses and reject validly executed Form N-648 disability exceptions.

5. Rather than applying a narrow, textually anchored fraud-prevention standard, Defendants weaponized the naturalization process by conducting extended, multi-hour, and deeply hostile sworn interrogations that grossly exceeded permissible policy boundaries. These abusive sessions included intrusive questioning about decades-old employment history in Vietnam, cross-examinations regarding personal family tragedies, and lay medical second-guessing.

6. Plaintiffs allege this conduct constitutes intentional disability discrimination and deliberate indifference in violation of Section 504 of the Rehabilitation Act of 1973, as well as a deprivation of constitutionally protected liberty and property interests without due process of law under the Fifth Amendment.

7. Plaintiffs did not bring this action precipitously, having exhausted every reasonable pre-litigation avenue to secure administrative correction.

8. On April 29, 2026, counsel for Plaintiffs placed the United States Attorney's Office on formal notice of the ongoing systemic violations. This was followed by a formal pre-litigation demand letter on May 1, 2026, which meticulously documented the unlawful interview practices, accommodation failures, and

severe due process defects occurring at the field office.

9. On May 8, 2026, Assistant U.S. Attorney Joshua Press responded on behalf of Defendants. When directly asked by Plaintiffs' counsel whether litigation should be paused to allow the agency to implement corrective measures, AUSA Press explicitly represented that he knew there would be some changes and affirmatively recommended a strategic pause.

10. These official written representations proved to be a bad-faith stall tactic, and Plaintiffs generously granted the requested administrative pause in reliance on the government's institutional integrity.

11. Instead of utilizing this window to enforce strict compliance with Form N-648 review limits, Defendants capitalized on Plaintiffs' forbearance to escalate their extra-regulatory campaign, leveraging the pause to coordinate unannounced, warrantless home raids on June 18, 2026.

12. Following these traumatic residential intrusions, Plaintiffs' counsel immediately placed Assistant United States Attorney Joshua Press on formal notice on June 21, 2026, explicitly detailing the unlawful behavior of the field agents. AUSA Press responded in writing that same day, stating that he would "share" counsel's documented concerns directly with his client agency, USCIS.

13. Just three days later, on June 24, 2026, Plaintiff Thi Thu Huong Phan appeared

at the field office for a second interview. Defendant Officer Do interviewed her for a grueling, **five-hours**. During this session, Officer Do openly manifested the extra-regulatory policy driving the office's N-648 adjudication practices, admitting on the record that the agency was utilizing the multi-hour session to independently test whether what Plaintiff Phan told her certifying medical professional, Dr. Jalazo, was true, and asserting that her ability to perform low-level manual nail salon tasks or write out a check negated her clinically certified cognitive disability waiver.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as these claims arise under the U.S. Constitution, the Administrative Procedure Act (5 U.S.C. §§ 702, 706), and the Rehabilitation Act of 1973 (29 U.S.C. § 794). The Court is also authorized to grant declaratory and prospective injunctive relief under 28 U.S.C. §§ 2201–2202.

15. Venue is proper in this District under 28 U.S.C. § 1391(e)(1) because Defendants are federal agencies and officers acting in their official capacities, all Plaintiffs reside within this District, and a substantial portion of the challenged conduct—including naturalization examinations, continuances, warrantless residential raids, and prolonged interrogations—occurred within the Northern

District of Illinois, where the USCIS Chicago Field Office is located.

## PARTIES

### A. Plaintiffs

16. Plaintiff Va Minh Ly is an elderly foreign national of Vietnam and a lawful permanent resident residing within this District, who sought a disability exception under Form N-648 due to cognitive slowing and diminished concentration. He was subjected to a prolonged, adversarial three-hour examination on April 7, 2026, conducted by Defendant Officer Dao, and was subsequently targeted for a warrantless site raid on June 18, 2026 conducted by John or Jane Doe Federal Officer.

17. Plaintiff Lin Sau Slen is a foreign national of Vietnam and a lawful permanent resident residing within this District, who sought a disability exception under Form N-648 due to cognitive slowing and diminished concentration. She was subjected to an extra-regulatory credibility trial by Defendant Officer Do on April 7, 2026, and was subsequently targeted for a warrantless site raid by a John or Jane Doe Federal Officer on June 18, 2026.

18. Plaintiff Dieu Van Huynh is a foreign national of Vietnam and a lawful permanent resident residing within this District, who suffers from severe mobility limitations, physical impairments, and profound post-traumatic stress

disorder. He was subjected to a strenuous and emotionally distressing examination on April 7, 2026, conducted by Defendant Officer Smith and was subsequently targeted for a warrantless site raid on June 18, 2026 conducted by John or Jane Doe Federal Officer.

19. Plaintiff Thi Thu Huong Phan is a foreign national of Vietnam and a lawful permanent resident residing within this District, who applied for naturalization with an accompanying Form N-648 exception. She was subjected to an initial examination on April 7, 2026, conducted by Defendant Officer Smith, and was subsequently targeted for a warrantless site raid on June 18, 2026 conducted by Defendant Jordan and a John or Jane Doe Federal Officer, and an isolated five-hour interrogation on June 24, 2026 conducted by Defendant Officer Do.

20. Plaintiff Long Dat On, a Vietnamese national and lawful permanent resident of this District, filed a Form N-400 naturalization application with a valid Form N-648 medical waiver. Due to limited English proficiency and cognitive impairments, he was subjected to a multi-hour interrogation by Defendant Officer Arcangel on April 16, 2026. Plaintiff reasonably fears the recurrence of this hostile conduct during his upcoming July 8, 2026, interview.

21. Plaintiff Thi Hue Phan, an elderly Vietnamese national and lawful permanent resident, submitted a Form N-400 with a valid Form N-648 detailing

age-related impairments. During her April 16, 2026 examination, despite being accompanied by counsel and an interpreter, she was subjected to an intrusive lay medical cross-examination by Defendant Officer Do. Plaintiff fears this hostile pattern will persist during her upcoming interview on June 30, 2026.

22. Plaintiff Hien Thi Tran is a foreign national of Vietnam and a lawful permanent resident residing within this District, who suffers from severe mobility limitations, physical impairments, and profound post-traumatic stress disorder. She was subjected to a grueling, emotionally abusive examination on April 16, 2026, conducted by Defendant Officer Do. Plaintiff reasonably fears that this hostile pattern of conduct will persist during her upcoming interview on June 30, 2026.

23. Plaintiff Tin Van Dang is a foreign national of Vietnam and a lawful permanent resident residing within this District, who applied for naturalization with an accompanying Form N-648 exception. He was subject to an initial examination on May 13, 2026, conducted by a John or Jane Doe Federal Officer and was subsequently targeted for a warrantless site raid on June 18, 2026 conducted by two John or Jane Doe Federal Officers. Plaintiff reasonably fears that this hostile pattern of conduct will persist during his upcoming interview on July 21, 2026.

24. Plaintiff Thi Bau Nguyen is a foreign national of Vietnam and a lawful permanent resident residing within this District, who applied for naturalization with an accompanying Form N-648 exception. She was subject to an initial examination on May 13, 2026, conducted by a John or Jane Doe Federal Officer. Plaintiff reasonably fears that this hostile pattern of conduct will persist during her upcoming interview on July 21, 2026.

25. Plaintiff Thuy Thu Tran is a foreign national of Vietnam and lawful permanent resident residing within this District, who applied for naturalization with an accompanying Form N-648 exception. She was subject to an initial examination on May 13, 2026, conducted by a John or Jane Doe Federal Officer. Plaintiff reasonably fears that this hostile pattern of conduct will persist during her upcoming interview on July 21, 2026.

**B. Defendants**

26. Defendant U.S. Citizenship and Immigration Services ("USCIS") is a component of the U.S. Department of Homeland Security ("DHS"), responsible for administering the nation's immigration system, including naturalization adjudications. USCIS is an Executive agency subject to the Rehabilitation Act and the Administrative Procedure Act.

27. Defendant U.S. Department of Homeland Security ("DHS") is the parent

department of USCIS, bearing ultimate institutional responsibility for the administration of the immigration benefit system and the conduct of its officers.

28. Defendant Kevin Riddle, Field Office Director (official capacity) directs the USCIS Chicago Field Office and is responsible for its policies, practices, training, and supervision. The Director possessed the authority to establish or modify the interview, accommodation, and field operation protocols challenged herein.

29. Defendant Officer Do (First Name Unknown) is an ISO/Adjudications Officer at the USCIS Chicago Field Office, sued in his official capacity. Plaintiff will amend this complaint to state Defendant's true first name once it is ascertained through discovery.

30. Defendant Officer Dao (First Name Unknown) is an ISO/Adjudications Officer at the USCIS Chicago Field Office, sued in his official capacity. Plaintiff will amend this complaint to state Defendant's true first name once it is ascertained through discovery.

31. Defendant Officer Smith (First Name Unknown) is an ISO/Adjudications Officer at the USCIS Chicago Field Office, sued in his official capacity. Plaintiff will amend this complaint to state Defendant's true first name once it is

ascertained through discovery.

32. Defendant Officer Arcangel (First Name Unknown) is an ISO/Adjudications Officer at the USCIS Chicago Field Office, sued in his official capacity. Plaintiff will amend this complaint to state Defendant's true first name once it is ascertained through discovery.

33. Defendant Officer Deric D. Jordan (official capacity) is a federal officer or agent assigned to the USCIS Chicago Field Office who executed the unannounced, warrantless June 18, 2026 raid at Plaintiff Thi Thu Huong Phan's residence.

34. Defendants John Does 1–2 and Jane Does 3–4 are federal field agents/officers whose names are currently unknown to Plaintiff. These defendants participated in the raid/operational action on June 18, 2026. Plaintiff sues these defendants in their official capacities and will amend this complaint to state their true identities once they are ascertained through discovery.

## STATUTORY AND REGULATORY FRAMEWORK

### A. Administrative Procedure Act (APA)

35. The Administrative Procedure Act (APA), 5 U.S.C. §§ 702 and 706, mandates judicial review of final agency actions that are arbitrary, capricious, an abuse of discretion, or contrary to law. Plaintiffs challenge the USCIS Chicago Field

Office's systemic 'shadow policy,' including its organized targeted enforcement campaigns, systematic boilerplate credibility denials, and extra-regulatory field operations. Because this operational framework governs the adjudication of an entire class of applicants, it constitutes a final, consummated agency directive ripe for judicial review.

**B. Immigration and Nationality Act (INA)**

36. The Immigration and Nationality Act (INA) governs naturalization adjudications. Under 8 U.S.C. § 1423(b)(1), applicants are exempted from English and civics testing if they possess a physical or developmental disability, as certified by Form N-648.

37. USCIS Policy Manual, Title 12, Part E, Chapter 3, requires officers to defer to the diagnoses of qualified medical professionals. Review is strictly limited to whether the Form N-648 is sufficient on its face and whether material inconsistencies exist.

38. Officers are prohibited from acting as medical experts or second-guessing clinical conclusions. An officer may only overstep this deference if there is objective evidence supporting a finding of 'credible doubt'—a narrow fraud-prevention threshold based on real, irreconcilable conflicts within the form itself. Adjudication guidelines prohibit using routine daily activities or

employment history as a basis to negate clinically certified disabilities.

**C. Rehabilitation Act of 1973**

39. Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a), mandates that Executive agencies provide meaningful access to their programs and activities for qualified individuals with disabilities. The Form N-648 medical waiver is a critical meaningful modification to the naturalization program, specifically designed to ensure that applicants whose impairments prevent compliance with standard testing are not unfairly excluded from citizenship.

40. By implementing an extra-regulatory, hostile, and coercive N-648 adjudication process, Defendants have transformed a necessary accommodation pathway into an exclusionary barrier. This conduct prevents disabled applicants from accessing the very exemption intended to guarantee them equal participation in the naturalization process.

41. Pursuant to 28 C.F.R. Part 39, Defendants are obligated to provide reasonable modifications to policies, practices, and procedures. This duty encompasses the administration of the N-648 waiver process itself, requiring that adjudication be conducted in a manner that is respectful, accessible, and free from discriminatory tactics that weaponize a claimant's disability against them.

## FACTUAL ALLEGATIONS

### A. April 2026 Targeted N-648 Interview Campaign

42. The USCIS Chicago Field Office initiated a coordinated, targeted enforcement campaign against Vietnamese applicants using valid disability waivers. On April 7 and April 16, 2026, the office concentrated these cases into two operational blocks, assigning a small pool of recurring officers to medically vulnerable claimants.

43. On April 7, eight N-648 cases were scheduled with only Officers Do and Smith. Officer Do is fluent in Vietnamese; given that every applicant in this block shared that national origin, the assignment strongly suggests a deliberate strategy to subject this specific group to intensive, national-origin-based credibility trials.

44. On April 16, 2026, eight additional disability interviews were assigned to Officers Arcangel and Do. Like the June 24 interview, these examinations involved the taking of sworn statements where formal consent was given. However, the examinations lasted three to five hours, and although Plaintiffs were accompanied by counsel and interpreters, Officers Do, Dao, Smith, and Arcangel bypassed medical deference. They utilized the same abusive, coercive tactics as the June 24 interrogation, rendering the process fundamentally flawed

and any statements obtained under duress. These officers relied on a lay theory that Dr. Royce Jalazo's clinical reports were "boilerplate" to launch exhaustive targeted enforcement campaigns.

45. Dr. Jalazo confirmed that repeated phrasing was confined to standardized technical definitions required by APA Ethical Principles. All diagnostic formulations and test interpretations were individualized. By using a non-medical impression of "boilerplate language" to override certified diagnoses, officers rejected valid waivers based on unwritten suspicion standards absent from the statutory framework.

46. The questioning demonstrates a uniform method of harassment.

47. First, officers treated legal guidance as a badge of fraud, asking if lawyers "sent them" to specific doctors.

48. Second, they used decades-old employment or physical tasks to challenge present deficits. Officer Arcangel interrogated Long Dat On regarding construction labor and scooter transport in Vietnam to contradict current memory limitations. Officer Do cross-examined Thi Hue Phan for hours on nail salon cleaning routines, using these tasks as a pretext to assert she could master complex English and civics testing.

49. Officer Dao questioned Va Minh Ly about daily commutes while the applicant

reported medication-induced drowsiness. Officer Do pressed Lin Sau Slen on salon cleaning and tax categories to manufacture inconsistencies.

50. Third, officers leveraged family tragedies to destabilize applicants. Officer Smith subjected Dieu Van Huynh to a granular interrogation regarding his grandson's accidental death in 2025. Officer Do pushed Thi Hue Phan to recount the deaths of her mother and sister, continuing the interrogation while the applicant was weeping.

51. Fourth, officers second-guessed specialty care. Officer Arcangel questioned Mai Tuyet Thi Nguyen on why she consulted Dr. Jalazo if a family doctor already prescribed Trazodone, implying specialized care was "doctor shopping." Fifth, officers used rapid pacing to transform cognitive symptoms into evidence of deceit. Officer Arcangel demanded chronological data from Long Dat On and Mai Tuyet Thi Nguyen, treating slow processing and forgetfulness as fraudulent contradictions rather than clinical indicators of dementia, depression, and PTSD.

**B. May 8, 2026 Email Inducement Trail and Detrimental Reliance**

52. On May 1, 2026, Plaintiffs' counsel sent a formal demand letter to the U.S. Attorney's Office detailing hostile N-648 examination practices and the agency's failure to defer to clinical medical professionals.

53. On May 8, 2026, Assistant U.S. Attorney Joshua Press responded, copying civil division supervisors, and stated that several identified interviews would be de-scheduled or rescheduled.

54. Plaintiffs' counsel subsequently asked if this signaled compliance with credible doubt guidelines and if a litigation pause was warranted. AUSA Press declined to agree with counsel's characterizations of the conduct but explicitly recommended a "pause" in filing, stating, "I do know that there will be some changes."

55. Following the May 8 communication, Plaintiffs paused litigation, anticipating that the USCIS Chicago Field Office would align its examinations with Form N-648 guidelines. Instead, Defendants proceeded with further targeted enforcement campaigns on May 13, 2026, and initiated warrantless field operations.

**C. The Continued N-648 Targeted Enforcement Campaigns of May 13, 2026**

56. Following Plaintiffs' May 1 demand, the USCIS Chicago Field Office canceled some scheduled interviews on May 13, 2026, signaling a partial acknowledgment of the administrative issues raised. However, for those interviews that proceeded, the office continued its targeted enforcement

campaigns. Plaintiffs Tin Van Dang, Thi Bau Nguyen, and Thuy Thu Tran were subjected to the same pattern of abusive and coercive conduct seen during the June 24 interrogation, including repetitive, multi-hour examinations that utilized employment history to discredit certified medical findings. While these sessions involved the taking of sworn statements where formal consent was given, the use of such hostile tactics rendered the process fundamentally flawed and any statements obtained were the product of duress.

57. These sessions exceeded the permissible scope of Form N-648 reviews, functioning as abusive, lay-medical credibility trials rather than legitimate inquiries. By subjecting these vulnerable Plaintiffs to exhausting, repetitive cross-examinations regarding daily routines and work histories, the Chicago Field Office confirmed that its unwritten policy—operating well outside the boundaries of governing statutes and agency regulations—persisted despite notice of civil rights violations.

**D. The June 18, 2026 Warrantless Residential and Workplace Raids**

58. On June 18, 2026, USCIS and DHS agents executed unannounced, warrantless field raids at the private residences and workplaces of multiple Plaintiffs. These coercive operations were designed to bypass designated legal counsel and intimidate vulnerable applicants. The following accounts, based on direct

interviews and available video evidence, represent only a subset of the misconduct that occurred during these operations.

59. During a site raid at a commercial business location involving Plaintiffs Lin Sau Slen and Va Minh Ly, their son, Cam Phi Ly, witnessed the officers' unannounced arrival. Upon the officers' demand to see his parents, Plaintiffs Slen and Ly, who possess severe cognitive disorders, experienced severe psychological distress. They froze, were visibly terrified, and were unable to communicate, effectively shutting down due to panic and lack of English comprehension. Counsel intervened to remind officers of the Plaintiffs' right to representation and their disability-related limitations.

60. Despite explicit notice of active legal representation, federal officers persisted in coercive interrogation tactics. Officers deployed a 'fraudulent photo trap' by presenting a photograph of an unidentified male to Plaintiff Slen to elicit an administrative contradiction regarding their female psychologist, Dr. Royce Jalazo.

61. Furthermore, officers interrogated the family on the selection of counsel and attempted to manufacture contradictions in the application paperwork.

62. Officers also engaged in administrative extortion, falsely claiming to possess video surveillance of the parents providing commercial nail services to induce a

confession; in reality, Plaintiffs perform only basic custodial cleaning tasks.

63. Finally, officers issued an unauthorized medical directive, ordering the Plaintiffs to memorize their drug regimens, effectively acting as unauthorized medical evaluators.

64. During a separate site visit at a nail shop where Plaintiff Thi Hue Phan worked, Defendant Officer Deric D. Jordan entered the premises, tapped the shoulder of Plaintiff Phan's adult daughter, and directed her to "go in the back" for interrogation. While no minor children were involved in these raids, this adult daughter was subjected to coercive interrogation by the agents.

65. At another location, the adult daughter of Plaintiff Dieu Van Huynh was subjected to similar coercive questioning. Officers attempted to verify the identity of the psychologist who certified the N-648, pressured family members to confirm if citizenship was 'guaranteed,' and interrogated them regarding sensitive family history, including the death of a child. These site visits served no lawful purpose and were designed solely to build a false record of doubt through intimidation.

**E. Government Notice and June 24 Interrogation**

66. On June 21, 2026, Plaintiffs' counsel sent a formal written notice to Assistant United States Attorney (AUSA) Joshua Press detailing the unlawful and

coercive tactics deployed by field agents during the June 18 residential raids. The communication documented unannounced, warrantless home entries and the improper, extortionate questioning of vulnerable applicants regarding private fee arrangements with their legal counsel.

67. AUSA Press acknowledged receipt of these complaints the same day, stating he would share the specific allegations with USCIS. This established immediate institutional knowledge within the Department of Justice and the USCIS Chicago Field Office regarding the ongoing constitutional and procedural violations committed by field staff.

68. Despite this notice, Defendants escalated their conduct. Although the interview had been scheduled weeks prior, Plaintiff Thi Thu Huong Phan appeared for her interview on June 24, 2026. This was a second naturalization interview specifically scheduled to evaluate the sufficiency of her revised Form N-648.

69. While USCIS possesses the authority to verify the factual basis of N-648 certifications, Officer Do bypassed established protocols by weaponizing this authority. He explicitly stated the agency intended to verify the veracity of Plaintiff Phan's statements to her doctor. However, Officer Do's conduct far exceeded the permissible scope of 'credible doubt' verification.

70. Throughout the session, Officer Do focused excessively on Plaintiff Phan's

daily routines and manual nail salon tasks. Rather than identifying material inconsistencies, Officer Do used this work history to argue that Plaintiff's physical capacity to perform basic manual labor—such as nail services—categorically rebutted Dr. Jalazo's clinical findings of cognitive impairment. This approach improperly substituted the officer's lay interpretation of menial tasks for the medical judgment of a qualified medical professional, invalidating the disability waiver based on non-medical criteria rather than clinical diagnostic evidence.

71. When counsel objected, Officer Do admitted on the record that inquiring about legal fee payments was a pretextual method for evaluating cognitive capacity—specifically, whether the applicant could write a check.

72. This admission confirms a pattern of extra-regulatory medical second-guessing. USCIS officers lack the authority to substitute lay assumptions about survival tasks like manual labor or check-writing for the certified clinical diagnoses of licensed professionals. Capacity to perform low-level physical labor does not equate to the cognitive capability required for standardized English literacy and civics testing.

73. Throughout the five-hour interrogation, Officer Do employed bad-faith tactics designed to exhaust and intimidate Plaintiff Phan. Given her documented

cognitive and physical impairments, any statements extracted during this session were obtained under severe duress and are constitutionally invalid.

## CLAIMS FOR RELIEF

### First Claim for Relief

Violation of the Administrative Procedures Act for Agency Action that is Arbitrary and Capricious, an Abuse of Discretion, and Not in Accordance with Law
5 U.S.C. §§702, 706(2)(A), 706(2)(B), and 706(2)(D)
Against USCIS and DHS, and Official-Capacity Defendants Only

74. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

75. Plaintiffs seek review of final agency action within the meaning of the Administrative Procedure Act, including the systematic scheduling and hostile conduct of N-648 interviews and the absolute refusal to adjudicate Plaintiffs' naturalization applications in accordance with governing law and policy.

76. USCIS and DHS are agencies of the United States subject to review under the APA.

77. The challenged conduct was undertaken by officers acting within the scope of their official authority and pursuant to agency decision-making, localized policies, and customs. The challenged actions are final for purposes of APA review because they represent the consummation of agency decision-making,

have direct and concrete legal consequences for Plaintiffs, and have effectively delayed, burdened, or foreclosed the lawful adjudication of Plaintiffs' naturalization applications.

78. Defendants acted arbitrarily, capriciously, abusively, and contrary to law by:

(a) applying an extra-regulatory and overbroad version of the "credible doubt" standard;

(b) conducting organized, targeted enforcement campaigns against vulnerable applicants;

(c) substituting lay speculation for the medical judgments of licensed professionals;

(d) using applicants' ordinary daily activities, work history, or family circumstances as a pretext for rejecting valid disability waivers;

(e) conducting prolonged interviews and coercive follow-up inquiries that were not authorized by statute, regulation, or policy;

(f) Furthermore, any further exhaustion of administrative remedies would be futile given the Agency's established bad-faith, extra-regulatory policy and continued escalation of coercive conduct despite formal notice of these violations. Plaintiffs have already provided ample notice of the systemic issues, and the Agency has demonstrated a clear unwillingness

to rectify its practices, thereby rendering any further pursuit of internal administrative processes ineffective and illusory.

(g) failing to provide reasoned explanations for continuances or adverse actions;

(h) failing to follow USCIS policy requiring appropriate deference to N-648 certifications; and

(i) failing to consider the disability-related limitations that made the challenged interview practices burdensome and inaccessible.

79. Defendants completely failed to consider important aspects of the problem, including the narrow medical nature of the N-648 inquiry, the absolute need for reasonable pacing and accommodations, the severe risk of psychological and physical harm to disabled applicants, and the reliance interests created by Plaintiffs' validly certified waivers and the government-induced litigation pause.

80. Defendants' actions were not the product of reasoned decision-making; instead, they were infected by bad-faith pretext, arbitrary lay assumptions, and a pattern of coercive conduct designed to create an artificial basis to deny or delay statutory relief.

81. As a direct and proximate result of Defendants' APA violations, Plaintiffs have suffered and continue to suffer extreme delay, uncertainty, severe emotional

distress, loss of access to lawful immigration benefits, and immediate risk of adverse immigration consequences, entitling them to declaratory and injunctive relief setting aside the unlawful agency action and requiring Defendants to lawfully adjudicate their applications in accordance with law.

**Second Claim for Relief**

Violation of Section 504 of the Rehabilitation Act
29 U.S.C. § 794
Against USCIS and DHS, and Official-Capacity Defendants

82. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

83. Plaintiffs are otherwise qualified individuals with disabilities whose severe physical, sensory, or cognitive conditions substantially limit one or more major life activities, including memory, concentration, communication, mobility, or the ability to participate in standard testing and interview processes without extensive accommodation.

84. USCIS and DHS are Executive agencies subject to Section 504 of the Rehabilitation Act and its implementing regulations, and the naturalization interview and N-648 review process administered by USCIS is a "program or activity" of a covered federal agency within the meaning of the Act.

85. Plaintiffs requested, required, or were plainly entitled to reasonable

accommodations and meaningful modifications because of their disabilities, including but not limited to a medically respectful review of N-648 forms, avoidance of repetitive questioning completely unrelated to the disability certification, and avoidance of hostile treatment that would exacerbate cognitive, psychological, or physical symptoms.

86. Defendants failed to provide meaningful access to Plaintiffs on equal terms with non-disabled applicants, instead imposing prolonged interviews, repetitive questioning, and coercive warrantless field tactics that predictably burdened applicants with cognitive, sensory, and physical impairments.

87. Defendants knew, or were deliberately indifferent to the fact, that their conduct would interfere with Plaintiffs' ability to participate in the naturalization process because:

(a) Plaintiffs appeared with counsel and interpreters;

(b) Plaintiffs' disability-related limitations were disclosed through the N-648 process;

(c) Defendants were repeatedly informed of the need for accommodations; and

(d) Plaintiffs' counsel specifically objected to the length and nature of the questioning.

88. Defendants' failure to provide reasonable accommodations and effective communication denied Plaintiffs meaningful access to the benefit of naturalization adjudication and subjected them to discrimination solely by reason of disability.

89. The discriminatory conduct was intentional, knowing, and/or carried out with deliberate indifference to Plaintiffs' federally protected rights.

90. Plaintiffs have suffered actual harm, including humiliation, delay, emotional distress, worsening medical and psychological symptoms, and risk of adverse immigration consequences.

91. Plaintiffs are entitled to declaratory and injunctive relief, and to such damages as are available under law.

**Third Claim for Relief**

Violation of the Fifth Amendment Due Process Clause
Against Individual Defendants in Their Official Capacities

92. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

93. Plaintiffs possess protected liberty and property interests in fair access to lawful immigration adjudication, in the fair and non-arbitrary consideration of their applications, and in freedom from coercive, extra-regulatory governmental action that exceeds lawful authority.

94. The Due Process Clause of the Fifth Amendment strictly prohibits the government from depriving Plaintiffs of those interests without notice and a meaningful opportunity to be heard at a meaningful time and in a fair manner.

95. Defendants deprived Plaintiffs of those rights by:

(a) conducting prolonged and coercive interviews beyond the legitimate scope of N-648 review;

(b) using repeated questioning unrelated to the medical certification to create a pretext for denial or delay;

(c) issuing continuances and other adverse actions without adequate factual explanation;

(d) conducting field visits or home/workplace encounters without proper notice, authority, or consent;

(e) relying on misleading or incomplete explanations to induce Plaintiffs to delay filing suit; and

(f) creating a process that was fundamentally unfair and not tailored to the claimed adjudicatory purpose.

96. Plaintiffs were completely denied a meaningful opportunity to understand and respond to the basis for Defendants' actions because the individual officers relied on unstated assumptions, non-medical occupational judgments, and

shifting rationales rather than a clear, reviewable record.

97. The challenged process was constitutionally inadequate because it did not provide Plaintiffs with a fair, neutral, and predictable mechanism for the adjudication of their disability-based exceptions.

98. Defendants' conduct was intentional, reckless, and undertaken with callous disregard for Plaintiffs' rights, directly and proximately causing a deprivation of constitutional rights, emotional distress, delay, uncertainty, and exposure to adverse immigration action, entitling Plaintiffs to declaratory relief, prospective structural injunctive relief, and compensatory and punitive damages.

## Fourth Claim for Relief

Declaratory and Injunctive Relief
Against All Defendants in Their Official Capacities

99. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

100. Plaintiffs have no adequate remedy at law for the ongoing and threatened harms alleged in this Complaint, as administrative appeal processes are unavailable or illusory in the context of indefinite, bad-faith delay accompanied by boilerplate continuances.

101. Defendants' extra-regulatory conduct is ongoing and capable of repetition, continuing to infect future interviews and any continuing adjudication of

Plaintiffs' naturalization applications.

102. Unless permanently enjoined by this Court, Plaintiffs will suffer immediate and irreparable harm, including continued coercive or discriminatory interviews, further indefinite delay in adjudication, the risk of summary denial based on unlawful occupational criteria, worsening psychological and medical harm, loss of employment authorization, loss of public benefits, and immediate exposure to adverse immigration action.

103. Plaintiffs are entitled to declaratory and prospective injunctive relief setting aside the unlawful agency action and requiring Defendants to conform their N-648 interview protocols to the governing statute and regulation.

## SECTION VII – PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court enter judgment in their favor and against Defendants, and grant the following relief:

### A. DECLARATORY RELIEF

(a) Enter judgment declaring, pursuant to 28 U.S.C. §§ 2201–2202 and 5 U.S.C. § 706(2)(A), that Defendants' pattern and practice of clustering N-648 interviews into adversarial sweeps, relying on non-medical stereotypes and extra-regulatory criteria, and issuing boilerplate

continuances and adverse notices is arbitrary, capricious, contrary to law, and in excess of statutory authority.

(b) Enter judgment declaring that Defendants' failure to provide reasonable disability accommodations and effective access during the naturalization process violates § 504 of the Rehabilitation Act, 29 U.S.C. § 794, and its implementing regulations.

(c) Enter judgment declaring that Defendants' conduct in subjecting Plaintiffs to coercive, prolonged, and medically irrelevant questioning, including the June 24, 2026 five-hour interrogation of Plaintiff Thi Thu Huong Phan, violated the Fifth Amendment.

(d) Enter judgment declaring that the June 18, 2026 field raids were unlawful to the extent they were conducted without a judicial warrant, without voluntary consent, or without other lawful authority.

**B. ENTRY OF JUDGMENT AND PROSPECTIVE INJUNCTIVE RELIEF**

(a) Enter preliminary and permanent injunctive relief enjoining Defendants from:

i. relying on non-medical stereotypes, lay assumptions, or extra-regulatory criteria in adjudicating N-648 waivers or

naturalization applications;

ii. denying reasonable disability accommodations, including pacing, breaks, interpreter access, or other modifications necessary for meaningful participation;

iii. conducting or threatening to conduct warrantless field visits, home visits, or workplace visits absent lawful authority and voluntary consent;

iv. subjecting Plaintiffs to coercive or excessively prolonged interviews or interrogation sessions that exceed lawful and medically appropriate bounds; and

v. using, referencing, or relying upon any statements obtained during the June 18, 2026 field raids in any further administrative, civil, or immigration proceeding, to the extent such relief is legally available.

(b) Enter preliminary and permanent injunctive relief requiring Defendants to adjudicate Plaintiffs' pending naturalization applications in a lawful manner consistent with the INA, applicable regulations, the USCIS Policy Manual, and the Rehabilitation Act.

(c) Enter such further prospective relief as the Court deems just, equitable,

and narrowly tailored to prevent recurrence of the unlawful practices alleged in this Complaint.

**C. STRUCTURAL INJUNCTIVE RELIEF**

(a) Enter structural injunctive relief, as appropriate and narrowly tailored, to remedy the institutional pattern and practice alleged herein, including one or more of the following measures:

i. appointment of an independent monitor;

ii. mandatory training for USCIS Chicago Field Office personnel on disability accommodations, N-648 review requirements, and lawful interview practices;

iii. limitations on interview length, with required breaks and meaningful access to counsel and interpreters;

iv. a prohibition on warrantless field visits or investigative home/workplace visits absent lawful authority and voluntary consent; and

v. mandatory audio and video recording of naturalization interviews and examinations, subject to appropriate privacy protections.

(b) If the Court deems any structural remedy warranted, Plaintiffs request that it be imposed for a period and under reporting conditions

determined by the Court to be necessary to ensure compliance and prevent recurrence.

**D. DAMAGES, FEES, AND COSTS**

(a) Award compensatory damages against the proper Defendant or Defendants, in their proper capacities and to the extent legally available, in an amount to be determined at trial, for all harm proximately caused by Defendants' unlawful conduct, including psychological and emotional distress, humiliation, reputational harm, lost wages, and out-of-pocket medical expenses.

(b) Award nominal damages on any constitutional claim for which compensatory damages are unavailable, to the extent permitted by law.

(c) Plaintiffs do not seek punitive damages against the United States, USCIS, DHS, or any official-capacity Defendant. Plaintiffs seek punitive damages against any individual-capacity Defendant only if and to the extent such relief is legally available.

(d) Award Plaintiffs their reasonable attorneys' fees and taxable costs pursuant to any applicable statute or authority, including 28 U.S.C. § 2412 and 29 U.S.C. § 794a(b), as available.

(e) Award such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Timothy A. Gambacorta

DATED: June 29, 2026

Timothy A. Gambacorta
IL Bar No. 6279115
AZ Bar No. 028460
Attorney for Plaintiffs

The Gambacorta Law Office, Inc.
5250 Old Orchard Road, Suite 300,
Skokie, Illinois 60077
Tel: 847-786-2599
Fax: 847-786-2612
Email: tim@gambacortalaw.com